## UNITED STATES v. KLYTIA CORPORATION.

Patent Appeal No. 4296.

Court of Customs and Patent Appeals.

Oct. 30, 1940.

On the Merits June 30, 1941.

Charles D. Lawrence, Acting Asst. Atty. Gen. (William J. Vitale and Dorothy C. Bennett, Sp. Attys., both of New York City, of counsel), for United States.

No appearance for appellee.

John R. Rafter, of New York City, amicus curiæ.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal by the United States from a judgment of the United States Customs Court, Second Division, reversing the judgment of the trial court in certain reappraisement proceedings involving fifteen importations by the Klytia Corporation of perfumery exported from France and entered at the port of New York during the period from July 26, 1929 to July 11, 1930. Thirteen of the shipments were appraised under the provisions of the Tariff Act of 1922, 42 Stat. 858, and two shipments were appraised under the Tariff Act of 1930, 19 U.S.C.A. § 1001 et seq.

In view of the conclusion which we have reached with respect to a preliminary question hereinafter set out and discussed, it is unnecessary further to refer to the issues involved upon the merits of the controversy.

It appears from the record that the original appeals for reappraisement were signed as follows: "Klytia Corp., J. F. Schmitt, Appellant." Below this signature is the notation "Notify Carl W. Stern, 24 State St." Upon the trial of the case before the trial judge, appearance for the plaintiff was noted as follows: "Carl W. Stern, Esquire, for the plaintiff, by Harry M. Farrell, Esquire, of counsel." It further appears that said Farrell conducted the case on behalf of appellee before the trial court. During the trial the Government established that the appellee corporation was created under the laws of the State of New York, and that subsequent to the taking of said appeals for reappraisement said appellee corporation had been dissolved by proclamation of the Secretary of State of the State of New York. The Government thereupon moved to dismiss the appeals upon the ground that the court had no jurisdiction of the plaintiff. In response to this motion Mr. Farrell stated as follows: "Mr. Farrell. In answer to that, if the Court please, I think that is true. We can't find this corporation; they are out of business; and of course, as shown by this, they have a date here from the Secretary of State as to just when they were —whatever, I don't know; probably by proclamation—dissolved. They were dissolved because they were no longer doing business; but, however, these appeals come before the Court, and under the law, I submit that it is the duty of the Court to find the value; and I might say that the reason for proceeding at this time is the fact that most of these are warehouse-bond entries, and Mr. Stern is on the bond."

The trial court reserved decision upon the motion, the testimony was completed, and the case was submitted. Later the court granted the motion and judgment was entered dismissing the appeals for reappraisement.

Application for review of said decision and judgment was seasonably made in the following form:

"To the United States Customs Court,
    "201 Varick Street, New York, N. Y.
"Gentlemen: Pursuant to the provisions of Section 501 of the Tariff Act of 1930, the undersigned hereby make application for a review of the decision of Judge Chas. P. McClelland as to the dutiable value of the merchandise covered by appeal to United States Customs Court's Reappraisement No. 97410-A, Entry No. 719177, Collector's Reappraisement No. 1940.
                "Respectfully,
                    "The Klytia Corp.,
                        "Appellant,
                    "Carl W. Stern,
                        "Atty."

The Second Division of the Customs Court, sitting in its appellate capacity, reversed the judgment of the trial court and remanded the case to it for consideration upon the merits upon the record presented. This action was based upon Section 29 of the General Corporation Law of the State of New York, as amended, which section reads as follows:

"*Corporate existence to continue in case of dissolution; authority of directors.* Upon the dissolution of a corporation for any cause and whether voluntary or involuntary its corporate existence shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs, and it may sue and be sued in its corporate name. Unless other persons shall be designated by law or by a court of competent jurisdiction, the directors shall have full power to settle its affairs and to distribute to the persons entitled thereto the assets remaining after the payment of debts and necessary expenses. * * * The corporate property may be transferred or conveyed by an instrument executed in the corporate name by one or more of the officers or directors thereunto authorized by the directors. The provisions of sections twenty-seven and twenty-eight shall apply to the meetings and acts of the directors."

Thereafter the trial court rendered a decision upon the merits, holding that as to all entries made under the Tariff Act of 1922 there was no substantial evidence establishing that the appraisements made by the local appraiser were erroneous, and therefore it dismissed the appeals to reappraisement involving such entries; as to the two entries made under the Tariff Act of 1930 the court held that the value of the merchandise there involved was the appraised value.

An application for review embracing all of the appeals for reappraisement was filed and was signed as follows: "The Klytia Corp., Appellant. Carl W. Stern, Atty., 8 Bridge Street, N. Y. C." The Second Division of the Customs Court reversed the judgment of the trial court and rendered judgment in favor of the Klytia Corporation.

On October 25, 1939, appellant filed in this court a petition for review of such judgment, together with assignment of errors. The record returned to this court discloses no proof of service of such petition for review and assignment of errors upon any person, and there has been no appearance in this court by or on behalf of appellee. The Government filed its brief in this court, and the cause was set for hearing on October 3, 1940.

On September 27, 1940, John R. Rafter, Esquire, an attorney of this court, filed a motion for permission to appear as an amicus curiae in this case, file a brief, and be heard orally. On September 30 counsel for appellant filed its consent to the granting of said motion, and the same was granted by us on said date. On the same day a brief by said amicus curiae was filed. In this brief there was raised, inter alia, the question of the jurisdiction of this court to entertain the appeal of the Government, upon the ground, as stated in the brief, that no service had been made upon appellee or any person representing it "of a copy of its (the Government's) assignment of errors or copies of the printed record or of its brief herein, as required by Rules XVI and XIX of the Rules of this Court, 35 U.S.C.A.Appendix." Said brief set out the dissolution of appellee, as hereinbefore referred to, and the law of the State of New York continuing the corporation and its board of directors, in case of dissolution, for certain purposes, among which was its liability to be sued in its corporate name. Said brief further set forth that on March 17, 1939, Carl W. Stern, the attorney of record for appellee in the case at bar, died, and that prior to the rendition of the judgment here involved by the Customs Court, Second Division, the court,

in the presence of Government counsel, was informed of the death of said Carl W. Stern. Said brief further set forth that the Government's petition for review of the judgment of the appellate division was filed in this court on October 25, 1939, and that under date of October 24, 1939, copies of said petition and assignment of errors were mailed to "Carl W. Stern, Esquire, 8-10 Bridge Street, New York, N.Y." and to "Klytia Corp., c/o Carl W. Stern, Esquire, 8-10 Bridge Street, New York, N. Y." It was further stated in said brief that no copy of the petition for review or assignment of errors, or copies of the printed record or the Government's brief, have ever been served upon the appellee or any of its directors. After citing a number of cases to the point that this court is without jurisdiction to entertain the involved appeal by reason of lack of said service upon appellee, the brief suggests that the appeal should be dismissed by the court, either upon motion by the amicus curiae, or upon its own motion.

On October 3, 1940, the Government filed a brief in reply to the brief of amicus curiae. In this brief it is stated: "The records in the office of the Assistant Attorney General show that the Government's petition for review, and assignments of error in this case, Customs Appeal 4296, were mailed to Klytia Corporation, c/o Carl W. Stern, 8-10 Bridge Street, New York, N. Y., on October 24, 1939, within the 60-day statutory period, and also to Carl W. Stern, individually, at the same address, on the same date; and that the said petition and assignments of error were *accepted* at the address to which they were mailed, and were *not returned* as undelivered. * * *" (Italics quoted.)

It is further stated in said reply brief: "The judgment appealed from was rendered by the Second Division on August 30, 1939, subsequent to the death of Carl W. Stern and with full knowledge of such death, Mr. Harry M. Farrell, of counsel, having so notified the appellate division orally, when the case was called for oral argument on June 22, 1939. At that time, Mr. Harry M. Farrell, also notified the appellate division that he had been unable to locate any officers or representatives of the Klytia Corporation. Briefs had been filed before the appellate division prior to the death of Carl W. Stern, and the Presiding Judge of the Second Division accordingly ordered the cases submitted."

In this brief the Government also challenged the right of the amicus curiae to raise any question of the sufficiency of service of the Government's petition for review and assignment of errors upon appellee.

On October 9, 1940, the Government filed with this court a request for permission to file an affidavit as proof of service of copies of the Government's petition for review and assignment of errors herein. This request was granted on October 25, 1940, and the record now contains proof of the mailing of copies of the Government's petition for review and assignment of errors, addressed as follows:

"Klytia Corporation,
c/o Carl W. Stern, Esq.,
8–10 Bridge Street,
New York, N. Y.
Carl W. Stern, Esquire,
8–10 Bridge Street,
New York, N. Y."

Inasmuch as the Government has, in its brief, admitted all of the facts bearing upon the sufficiency of service of copies of the petition for appeal and assignment of errors upon appellee, it is unnecessary for us to consider any alleged statements of fact in the brief of amicus curiae, or his right to raise the question of the sufficiency of such service, for we are convinced that if appellee has not been served with copies of said petition and assignment of errors, it is the duty of this court, sua sponte, to consider and determine whether the Government's appeal may now be heard upon its merits.

Section 198 of the Judicial Code, U.S.C. Title 28, § 310, 28 U.S.C.A. § 310, governing appeals to this court from the United States Customs Court provides as follows: "If the importer, owner, consignee, or agent of any imported merchandise, or the collector or Secretary of the Treasury, shall be dissatisfied with the decision of the United States Customs Court as to the construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, or with any other appealable decision of said Court, they, or either of them, may, *within sixty days next after the entry of such* decree or *judgment,* and not afterwards, *apply to the Court of Customs and Patent Appeals for a review* of the questions of law and fact involved in such decision. * * * Such application shall be made by *filing in*

*the office of the clerk of said court* a concise statement of errors of law and fact complained of; *and* a *copy* of such statement *shall be served* on the collector, or on the *importer, owner, consignee,* or *agent,* as the case may be. * * *" (Italics supplied.)

Rule XVI, 35 U.S.C.A.Appendix, of this court reads as follows:

"Assignment of errors

"The party seeking a review of any appealable decision of the United States Customs Court shall file with the clerk of this court, in duplicate, a concise statement of the errors of law and fact complained of, and a copy of such statement shall be served on the collector or on the importer, owner, consignee, agent, or attorney as the case may be, either by mail or by delivering the same personally to the party to be served or to his attorney, who shall have regularly appeared before said United States Customs Court on or before the date of such application. Such service, in case of mailing, shall be by depositing in a post office a copy of such statement in a sealed envelope plainly addressed to the party or attorney to be served, at his place of business or residence, with postage thereon fully prepaid. In all cases where the United States is not the appellant, such application for review shall be accompanied by the filing fee of $6."

The construction of said section 198 of the Judicial Code was considered by this court in the case of Germania Importing Co. v. United States, 8 Ct.Cust.App. 97, T.D. 37218. In that case the assignment of errors was not served upon the collector within 60 days from the entry of final judgment by the Board of General Appraisers (now the United States Customs Court), but was served a little more than 90 days thereafter. The Government moved to dismiss the appeal upon the ground that such service had not been had within 60 days from the entry of judgment by the board. In denying this motion the court, after quoting section 198, supra, stated: "After a careful examination of the authorities afforded by the decisions of the Supreme Court of the United States and of several States upon statutes similar in language to this, the court is of the opinion and holds that the provision of section 198, supra, 'and a copy of such statement shall be served on the collector, or on the importer, owner, consignee, or

agent, as the case may be' is not jurisdictional and if omitted or unreasonably delayed this court has ample power to direct its issue."

We then quoted the following from the case of Lockman v. Lang, 8 Cir., 132 F. 1: "A citation to appear at the hearing in the appellate court is not jurisdictional in its nature. Its only purpose is to give notice to the appellees that the appeal will be prosecuted, so that they may appear and have a hearing if they desire. It is a part of the procedure prescribed not to give jurisdiction to the appellate court, but to secure to the appellees a fair opportunity to present to that court their arguments in support of the decision below. If, through accident, or mistake, the citation has been omitted, and no notice has been given to the appellees of the hearing, the appellate court has ample power to direct its issue and to continue the case until reasonable notice of the hearing has been given. But it may not dismiss an appeal, which is a matter of right, and which is duly allowed by the trial court by the mere acceptance of security for its prosecution (Simpson v. First National Bank [8 Cir.] 129 F., 257, 260) until an opportunity to give the requisite notice has been furnished, whether the application for the citation is made before or after the statutory time for the appeal has elapsed. [Citing cases.] The appeal in this case was duly allowed, and the case was transferred to the jurisdiction of this court by the acceptance of the security offered by Williams on March 31, 1903, within the 10 days prescribed for the appeal."

We then cited a large number of cases in support of our statement above quoted, after which the court concluded its opinion as follows: "In the appeal of Cohn & Rosenberger v. United States, decided by this court May 17, 1912 (3 Ct.Cust. Appls., 288; T.D. 32575), the same question was raised upon motion as herein presented. In that case the Government took precisely the position herein taken by the importers and was sustained by this court. Since said time the practice here complained of has been pursued without question, wherefore it would seem that this long-continued practice might well justify its exercise by the importers in this case.

"The decision of the board herein was rendered on or about June 21, 1916, and a copy of the importers' petition served

on the collector September 25, 1916. Under the particular circumstances of this case, the court deems that notice to the collector was not unreasonably delayed. The motions on behalf of the Government are denied and that on behalf of the importers in Germania Importing Co. v. United States granted."

■ It will be observed that in the Germania Importing Co. case last above cited it was expressly held that failure to serve a copy of the assignment of errors upon the opposing party was not a jurisdictional defect, and that such service might be made after the lapse of the statutory period for taking an appeal.

There is, however, nothing in the opinion in said case to indicate that this court had jurisdiction to determine the merits of an appeal in the absence of service, actual or constructive, upon the opposing party or his attorney, of a copy of the assignment of errors. The cases cited in the opinion clearly indicate that such service must be had before the court may proceed to a determination of the merits of the case.

Whether or not, if it were shown that actual service could not be had, we would have jurisdiction to proceed to a determination of the case, or whether in such event we might upon application permit service by publication so as to give constructive notice to appellee, we need not here determine, for the reason that there is no showing before us that a valid service upon appellee might not be had in the event that the service relied upon by appellant is held to be invalid.

In any event, we are clear that if no service of the assignment of errors has been had upon appellee, as the statute provides, we should not proceed to a determination of the merits of the appeal at this time.

This, we think, is the clear implication of the decision of this court in the case of Germania Importing Co. v. United States, supra.

We next come to the consideration of the question of whether the record discloses service upon appellee of a copy of the assignment of errors.

The Government contends that the mailing of a copy of the assignment of errors, addressed to the "Klytia Corporation, c/o Carl W. Stern, 8-10 Bridge Street, New York, N. Y." constituted a valid service

upon said corporation, within the meaning of section 198, supra, and Rule XVI of this court, claiming that the only address given by appellee was 8 Bridge Street, New York City, and that the notice was mailed to that address and was not returned to the sender.

The difficulty with this contention is that appellee never gave the location of 8 Bridge Street, New York City, as its place of business or residence. As hereinbefore stated, the original appeals for reappraisement were signed "Klytia Corp., J. F. Schmitt, Appellant. Notify Carl W. Stern, 24 State St." Manifestly this did not purport to give the place of business or residence of appellee. The words "Notify Carl W. Stern, 24 State St." merely indicated that Carl W. Stern was the attorney or agent of appellee, to whom any relevant notices might be sent, and it afterwards appeared that Carl W. Stern was the attorney of record for appellee.

The application for review of the judgment of the trial court dismissing the appeals to reappraisement was signed: "The Klytia Corp., Appellant, Carl W. Stern, Atty." There no address was given.

The second application for review, which resulted in the judgment from which the appeal to this court was taken, was signed: "The Klytia Corp., Appellant. Carl W. Stern, Atty., 8 Bridge Street, N. Y. C." Clearly this purported to give only the address of the attorney for appellee, and not its place of business or residence.

■ It seems too plain for argument that mailing a copy of the petition for review and assignment of errors to the "Klytia Corporation, c/o Carl W. Stern, Esq., 8-10 Bridge Street, New York, N. Y." did not, in view of the death of said Stern, constitute service upon appellee.

The Government next contends that "Inasmuch as *no formal written notice* of the *death* of Carl W. Stern has been filed with the Clerk of the Customs Court in these cases, the said Carl W. Stern then remained, and still remains, attorney of record in the court below," and that therefore copies of the petition for review and assignment of errors mailed to "Carl W. Stern, Esquire, 8–10 Bridge Street, New York, N. Y." constituted a valid service of the same upon appellee.

This contention by the Government is made in the face of the fact that it admits that Carl W. Stern died before the rendition of the judgment appealed from,

and that the Customs Court, Second Division, was advised of such death by counsel who conducted the case in behalf of appellee, prior to the rendition of such judgment, and in the presence of Government counsel.

■ It is elementary law that the death of an attorney engaged by a client terminates a mere contract of employment.

In the case of Tripp v. Santa Rosa Street Railroad Company, 144 U.S. 126, 12 S.Ct. 655, 656, 36 L.Ed. 371, the court said: "* * * Service may be had upon his attorney or counsel with like effect as upon the party himself, but, when counsel of record is dead, it cannot be served on his personal representative, nor even on his partner, if not regularly appearing on the record as counsel in the cause. * * *"

See, also, Bacon et al. v. Hart, 1 Black 38, 66 U.S. 38, 17 L.Ed. 52, where it was held that service of a citation upon the executrix of the deceased counsel did not constitute service thereof upon the party or his counsel.

We are therefore constrained to hold that there has been no service of the petition for appeal or assignment of errors upon appellee or upon its attorney or agent.

It further appears from the Government's brief that Rule XIX of this court has not been complied with; said rule provides that an appellant shall serve three copies of the printed record on the appellee or his counsel, and that within 30 days after receipt of the printed record appellant shall serve upon appellee or his counsel not less than three copies of his brief. The rule further provides that the court may on motion extend the time for filing of briefs.

That this rule has not been complied with is apparent from the following statement in the Government's reply brief:

"No notice of appearance was filed in this Court by counsel for appellee, as provided in Rule XXIV of the Rules of this Court. Therefore, the Government mailed copies of the printed record to John R. Rafter, Esq., on whose behalf Harry M. Farrell, Esq. had appeared as trial counsel in the court below. That the said Harry M. Farrell did appear as trial counsel for and on behalf of the said John R. Rafter, is conceded in the following statement appearing on page 2 of the instant motion filed by the said John

R. Rafter, requesting permission to appear herein as amicus curiae:

" 'The undersigned was retained by the said Carl W. Stern during his lifetime, as counsel in the above case which was then pending in the United States Customs Court, the trial having been actually conducted by Harry M. Farrell, Esq., as trial counsel, who was and is associated with the office of the undersigned.'

"Thereafter, within the time allowed by this Court, one printed copy of the Government's brief was mailed to the said John R. Rafter, Esq., three copies were mailed to Messrs. Laughlin & Stern, attorneys for the Estate of Carl W. Stern, 70 Pine Street, New York, N. Y., and one copy was mailed to Fred Bennett, Esq., 8 Bridge Street, New York, N. Y. surviving law partner of Carl W. Stern."

With regard to the above statement it is sufficient to say that John R. Rafter never appeared as attorney or counsel in these cases, and the record discloses that Harry M. Farrell appeared, not as counsel for Mr. Rafter, but that Carl W. Stern appeared "by Harry M. Farrell, Esquire, of counsel." Whether, upon the record before us, service upon Mr. Farrell would have been sufficient we need not here inquire, for no such service was made.

■■ It is clear that service upon Mr. Rafter did not comply with Rule XIX. It is also clear that service upon the attorneys for the estate of Carl W. Stern, and service upon Fred Bennett, Esq., as surviving law partner of Carl W. Stern, was insufficient to comply with said rule. Tripp v. Santa Rosa Street Railroad Company, supra.

For the reasons above stated, we must hold that there has never been any service of the printed record or appellant's brief upon appellee or its counsel.

In view of all the foregoing, the question remains as to what disposition of the case should be made at this time.

■ We have no doubt of our power, sua sponte, to dismiss this appeal for failure to comply with section 198, supra, and Rules XVI and XIX of the rules of this court; but, under all the circumstances, this we are loath to do, although appellant has had more than one year in which to make service upon appellee of its assignment of errors, and several months in which to serve upon appellee copies of the printed record and its brief.

It does not appear that any attempt was made by the Government to ascertain who constituted the board of directors of appellee corporation at the time of its dissolution, so that service might be made upon them. However, the Government should not be deprived of its right to review of the judgment appealed from if such review can be legally had. There are here no equitable considerations entitling appellee to the exercise of any discretion by the court in its behalf that the court may possess.

We think the ends of justice will be best served by giving to appellant another opportunity to make service upon appellee of copies of the assignment of errors, printed record, and the brief of appellant, and for that purpose the hearing of this case will be continued to the February session of this court, and appellant is granted time to January 1, 1941, to make the required service of the papers aforesaid upon appellee.

■ During the oral hearing of the appeal before us appellant's counsel asked leave to file a motion to amend the title of this proceeding by adding thereto, as additional undisclosed appellees, the names of M. J. Corbett & Co., Inc., 8 Bridge Street, New York, N. Y. and/or Mr. Leo C. Stern and Mr. H. Richard Stern, 70 Pine Street, New York, N. Y., executors of the last will and testament of Carl W. Stern, deceased, late of 8 Bridge Street, New York, N. Y. In support of this motion there is an affidavit by one Jacob F. Schmitt which reads as follows:

"Jacob F. Schmitt, of 419 Scarsdale Road, Crestwood, New York, and employed at the Chinese Handcrafts, Inc., 279 Fifth Avenue, New York, N. Y., being duly sworn, deposes and says:

"That I am the same person who signed the appeal to reappraisement No. 97410-A, a copy of which is on pages 5 and 6 in the Transcript of Record on appeal from the United States Customs Court to the United States Court of Customs and Patent Appeals no. 4296—the United States, appellant, vs. Klytia Corporation, appellee; that I was a clerk in the office of M. J. Corbett & Company, customs brokers, for a period of over twenty years.

"Carl Stern, customs attorney, owned the controlling interest in this company and I had a power of attorney to sign for M. J. Corbett & Company and also Carl Stern, and in my work as a clerk in the office, I had frequent occasion to sign for both M. J. Corbett & Company and Carl Stern, signing customs forms and papers over a period of years. Consequently, when I signed the appeal to reappraisement above cited, it was to me only a routine matter and I did not sign it as a corporate officer as I never was at any time an officer of the Klytia Corporation; that the Klytia Corporation was only one of many other firms for which M. J. Corbett & Company did customs brokerage work.

"(Sgd) Jacob F. Schmitt".

Permission to file said motion was granted on October 25, 1940. Said motion is now denied. It does not affirmatively appear that said Schmitt signed the original appeals for reappraisement as the agent of Corbett & Co. On the contrary, the clear implication from the signatures to the appeals for reappraisement is that the said Schmitt signed as agent for the Klytia Corporation. Below the signatures "Klytia Corp., J. F. Schmitt" is found the word "Appellant," clearly signifying that only one party, viz., the Klytia Corporation, was taking the appeal. This view is confirmed by the subsequent proceedings, wherein both applications for review by the appellate division of the Customs Court were signed by "The Klytia Corp., Appellant, Carl W. Stern, Atty."

We are satisfied that at no time has there been any undisclosed appellee in this case, and that throughout the only party involved, other than the United States, has been the appellee Klytia Corporation.

An order will be entered denying the last-mentioned motion of appellant, and continuing this appeal to the February session of this court, with permission to appellant to make service of the necessary papers upon appellee not later than January 1, 1941.

On the Merits.

GARRETT, Presiding Judge.

This is an appeal by the Government from the judgment of the United States Customs Court, Second Division, reversing that of the trial judge in a reappraisement proceeding relating to the dutiable value of perfumeries imported from France by appellee during a period extending from July 24, 1929, to July 11, 1930.

By reason of certain unusual circumstances relating to the legal status of Klytia Corporation (and probably in part by reason of it having been postponed from time to

time awaiting a decision in another proceeding), the case has been "long drawn out." It was twice before both tribunals of the Customs Court and this is our second decision in the case. Our first decision, which did not relate to the merits of the controversy, was rendered October 30, 1940. The facts relating to the legal status of the corporation were there set forth in full. Under the facts then appearing, we found that there had been no service upon appellee, or its counsel, of the printed record or of appellant's brief in the appeal to us, as required by our Rule XIX, and the case was continued to our February 1941 session with permission to the Government to make service of the necessary papers not later than January 1, 1941.

From our former decision it will be seen that one Carl W. Stern was originally noted as attorney for Klytia Corporation and was recognized as such during the earlier proceedings below. He did not personally appear before the tribunals below, however, the appearance having been made "by Harry M. Farrell, Esquire, of counsel." It further appeared that Carl W. Stern died March 17, 1939. This was subsequent to the date (October 3, 1938) of the second decision of the trial judge, but prior to the date (August 30, 1939) of the decision of the appellate division reversing the judgment of the trial judge, from which decision of reversal the instant appeal to this court was taken. It further appeared that the only service of papers relating to the appeal to this court was made by mailing copies of same to Carl W. Stern at the address given by him on the earlier notation of appearance. These were mailed October 24, 1939, about seven months after Stern's death, and it was conceded that no service had been had upon any director or other representative of the Klytia Corporation, which, in the manner described in our former decision, had been dissolved on or about December 15, 1934. The dissolution order was issued subsequent to the appeals for reappraisement, but about a year and a half prior to the trial in which the evidence was introduced—June 22, 1936—and nearly two years prior to the first decision by the trial judge, rendered October 5, 1936.

Mr. Farrell, who is an enrolled attorney of the United States Customs Court and of this court, appeared at the trial below, and, being "of counsel" with Mr. Stern, represented the Klytia Corporation in the taking of the testimony, and submitted the case.

In our former decision we said: "Whether, upon the record before us, service upon Mr. Farrell would have been sufficient we need not here inquire, for no such service was made."

Following our former decision various proceedings have been had and different steps taken by the Government in an effort to make legal service of the papers necessary to support the appeal to us. These need not be recited in detail. An order of the court was entered in December 1940, permitting substituted service upon the Secretary of State of New York, and it appears that on or about December 20–23, 1940, copies of the necessary papers were served upon Mr. Farrell by mail. The receipt of them is acknowledged by Mr. Farrell in an affidavit under date of December 23, 1940, filed in the office of the clerk of this court with a memorandum submitted by John R. Rafter, Esq., to whom permission had been granted to appear here as amicus curiae, December 24, 1940.

It is proper to say that in the course of the affidavit, Mr. Farrell stated: "My sole connection with the said Klytia Corporation case was my appearance therein before the United States Customs Court as counsel *for* Carl W. Stern, Esquire, attorney for the Klytia Corporation, during his lifetime and while said case was pending undecided in that court. I did not then have, and I have not since received, any authority, express or implied, to represent the Klytia Corporation in any capacity whatsoever, except that, while said case was pending undecided in the United States Customs Court, I had verbal authority from said Carl W. Stern to try said case for him in that court."

An examination of the four decisions below, to wit, Reap.Dec. 3950, 70 Treas.Dec. 1278; Reap.Dec. 4142, 72 Treas.Dec. 1124; Reap.Dec. 4404, 1 C.D. 636, and Reap.Dec. 4632, 3 C.D. 555, shows the appearance of "Carl W. Stern (Harry M. Farrell of counsel)" for Klytia Corporation.

Inasmuch as Mr. Farrell was duly recognized by the tribunals of the Customs Court as attorney for Klytia Corporation and did, in fact, represent it in the proceedings there, being the only attorney appearing in person in its behalf, his later appearances being after Mr. Stern's death, it does not admit of doubt that had the papers in connection with the appeal to this court been properly served upon him at the time the appeal was taken, such service under the rules and practice of the courts would have been sufficient.

Rule XVI of this court provides: "The party seeking a review of any appealable decision of the United States Customs Court shall file with the clerk of this court, in duplicate, a concise statement of the errors of law and fact complained of, and a copy of such statement shall be served on the collector or on the importer, owner, consignee, agent or attorney, * * * *who shall have regularly appeared* before said United States Customs Court on or before the date of such application." (Italics supplied here.)

■ Under the facts now appearing we think there can be no question but that the service upon Mr. Farrell above recited was sufficient to perfect the appeal and that we may now consider the case upon the merits.

In so holding it is not meant to imply that it was any part of Mr. Farrell's obligation or duty to appear before this court, nor is it intended to suggest that he has in anywise violated any rules of practice, or any rules of ethical conduct appertaining to his profession.

We come now to the merits. Fifteen entries are involved, thirteen of which were made under the Tariff Act of 1922, 42 Stat. 858, and two under the Tariff Act of 1930, 19 U.S.C.A. § 1001 et seq. All are listed in schedule A of record. What is referred to as the test case appears to be reappraisement 97410-A, the merchandise being entered by entry No. 719177 July 24, 1929. The merchandise involved in that entry was entered by the importer at unit invoice prices, less 60 per cent discount, less 12 per cent luxury tax, plus packing as invoiced. The local appraiser appraised it at unit invoice prices, less 40 per cent discount, packing included, which, the brief on behalf of the Government states, represented "foreign value as defined in Sections 402(b) and (c) of the Tariff Acts of 1922 and 1930, respectively, 42 Stat. 949, and 19 U.S.C.A. § 1402(b, c)."

In the decision of the appellate division, it was stated: "When the importer came to enter the merchandise in all the appeals listed in schedule A, hereto attached and made a part hereof, with the exception of reappraisement 97410-A, which was the test case, he made what is known as duress entries, adding in each case an amount sufficient to make his entered value equal the appraised value in reappraisement 97410-A, citing in each case entry 719177, which is the entry in reappraisement 97410-A. On the Summary of Examination and Appraisement, we find the notation in red ink:

'Duress Entry prices same as E. 719177,' with the exception of reappraisement 97711-A, which is simply marked in red ink 'Damage,' but which was also entered under duress, as above stated. The marks or notations above referred to were placed upon the official papers in this case by either the examiner or the appraiser."

The brief on behalf of the Government states, in substance, that the Klytia Corporation was the exclusive United States agent of the foreign manufacturer and there was no export value for the merchandise. No question seems to have been made respecting this, and counsel for appellee conceded at the beginning of the trial below that no claim was being made for a deduction of the 12 per centum luxury tax, such concession evidently being made as a result of our decision in the case of Veoley, Inc., J. E. Bernard & Co., Inc., v. United States, 23 C.C.P.A., Customs, 101, T.D. 47766.

So, the issue below related to the question of whether, as stated by the appellate division, "the discount from the unit prices should be 40 per centum, as found by the appraiser, or 60 per centum as contended for by the plaintiff."

■ During our study of the case we discovered a jurisdictional question in connection with the so-called duress entries which was not referred to by the tribunals of the Customs Court and which was not raised by counsel either below or here, but which under numerous authorities it is our duty to raise sua sponte and act upon. In the case of Morris v. Gilmer, 129 U.S. 315, 325, 9 S.Ct. 289, 292, 32 L.Ed. 690, the Supreme Court of the United States said: " * * * if the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further, and to dismiss the suit; and its failure or refusal to do what, under the law applicable to the facts proved, it ought to do, is an error which this court, upon its own motion, will correct, when the case is brought here for review. The rule is inflexible and without exception, as was said, upon full consideration, in [Mansfield, Coldwater, etc.,] Railway v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510 [28 L.Ed. 462], 'which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the

record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relations of the parties to it.' To the same effect are [King Iron] Bridge [& Mfg.] Co. v. Otoe County, 120 U.S. 225, 7 S.Ct. 552 [30 L. Ed. 623]; Grace v. [American Central] Insurance Co., 109 U.S. 278, 283, 3 S.Ct. 207 [27 L.Ed. 932]; Blacklock v. Small, 127 U.S. 96, 105, 8 S.Ct. 1096 [32 L.Ed. 70]; and other cases."

In considering this jurisdictional question here it should be borne in mind that all the involved entries were made during the period extending from a time in July 1929 to a time in July 1930, and that thirteen of them were made under the Tariff Act of 1922, the other two being under the 1930 act, which acts so far as applicable to the matter under discussion were substantially the same.

It, therefore, becomes necessary to inquire as to the state of the law applicable to the entries *at the time they were made and at the time or times when the local appraiser acted.*

The merchandise involved in the test case was entered July 24, 1929, entry No. 719177, and appraised by the local appraiser at the advanced value on August 8, 1930. The appeal for reappraisement was received in the office of the clerk of the Customs Court August 26, 1930. An examination of the papers in the duress cases discloses that certificates in the usual form were filed by the importer, certifying in effect that advances in the original entered values were made to meet the advance made by the appraiser in the test case. Notwithstanding the filing of such certificates and the pending of the appeal in the test case, the local appraiser proceeded to appraisements in the duress cases and on various dates, ranging from on or about September 13, 1930, to March 1931, appraised the merchandise at the advanced entered values—that is, he allowed in each case a discount of only 40 per cent instead of 60 per cent as claimed by the importer.

Upon the "Summary of Examination and Appraisement" attached to the invoice in each of the duress entries, there appears the following notation: "Prior to the time of filing the requisition for the return of this invoice both the invoice and the merchandise had come under the observation of the examiner for the purpose of appraisal. Neither the invoice nor the merchandise had come under the personal observation of the appraiser for the purpose of appraisal."

Each of the above notations was stamped "Aug 8 1930," which was the date of the appraisement in the test case. The natural presumption is that the local appraiser upon advancing the value in the test case made requisition for return of the invoices in the other cases and thereafter on different dates proceeded to appraise the merchandise involved in the respective duress entry cases upon the same basis as the appraisement in the test case.

The only appeal which is set forth in full in the record is the appeal in the test case, but in connection with it there is a certificate by the clerk of the United States Customs Court which reads, "I hereby certify that appeal to reappraisement No. 97410-A is typical of all the other appeals enumerated in the petition," and the proceedings at the trial (which it may be said was delayed for some reason until June 22, 1936, when the evidence was introduced and the case submitted before the single judge), as well as all the decisions below, list all fifteen of the cases as being on appeal and all were included in the respective judgments, including, of course, the judgment of the appellate division now before us on appeal.

It is our view, for reasons hereinafter stated, the *time* of these entries and appraisements being borne in mind, that the local appraiser erred in appraising the merchandise involved in the duress entries, and that it was not incumbent upon the importer to take appeals in those cases in order to obtain relief. If they were proper duress entries it was only necessary, during that period, that he prosecute an appeal in the test case.

On February 21, 1930, we rendered a decision in the case of Beaver Products Co., Inc. (F. W. Myers & Co.) v. United States, 17 C.C.P.A., Customs, 434, T.D. 43878, in which it was held by a majority as expressed in the second syllabus accompanying our opinion that "(a) Where merchandise is entered under duress, is similar in character and value to the merchandise involved in the test case then pending on appeal, and the issues are sim-

ilar, the entrant is not compelled to appeal to reappraisement to obtain the relief sought by his entry."

It is proper to say that Judges Hatfield and Lenroot filed a vigorous dissent to the majority opinion, but the rule announced by the majority was followed by the court in several subsequent cases, Judges Hatfield and Lenroot specially concurring, and in one case dissenting as to a certain point presented in the majority opinion, not relevant here.

In the case of United States v. Fuchs & Lang Manufacturing Co., 18 C.C.P.A., Customs, 460, T.D. 44760, decided March 25, 1931, we held (Judges Hatfield and Lenroot specially concurring) that when a duress entry was made under the statute, the local appraiser (we again quote from the syllabus) "must suspend his appraisement therein until the final decision of the test case on reappraisement or re-reappraisement then pending on appeal." See, also, the cases of Innis, Speiden & Co. v. United States, 19 C.C.P.A., Customs, 1, T.D. 44789, decided April 3, 1931; and United States v. Friedlaender Co., 19 C. C.P.A., Customs, 334, T.D. 45498.

In the last-cited case, decided February 1, 1932, it was suggested by the majority, in substance, that if by reason of our former decisions undue delay in the trial of duress cases existed, the remedy for such a situation rested with the legislative, not the judicial, branch of the Government, and on July 12, 1932, there was enacted H.J.Res. 336, 47 Stat. Vol. 1, c. 473, p. 657, 19 U.S.C.A. § 1503a, which, in substance, declared the "true intent and meaning" of the statutes pertinent to socalled duress entries to have been and to be different from that announced by the majority in the cases above cited. We have regarded that act as binding upon the court in all cases arising subsequent to its passage but we have not regarded it as retroactive in character. United States v. Claflin, 97 U.S. 546, 548, 24 L.Ed. 1082. Therefore, inasmuch as the rules announced by the majority in the several cited cases were the controlling rules at the time of the importations and appraisements here involved, we are of opinion that, under the facts appearing, they should have been applied in the instant case; that it was incumbent upon the local appraiser to suspend his appraisement in the duress cases until the final determination of the test case, and that the importer was not required to take appeals in those cases. Such being the situation, it must be held that the local appraiser's appraisements in the duress cases were premature and invalid, and it must also be held that those cases were never properly before the tribunals of the Customs Court for decision on their merits and hence the appeals as to them should have been dismissed on the ground that the appraisements were invalid. This should now be done, and the future procedure should be governed by the rule laid down in the Friedlaender Co. case, supra, where it was said in the controlling opinion of this court:

"The important thing in such cases is that the appraisement in the duress cases be held in abeyance until the test case has been decided. When this right has been secured to the duress entrant, and the issue raised in the test case has been finally determined, the customs officials will proceed with the ascertainment of the facts necessary to a proper valuation and classification of the goods named in the duress entry. The appraiser will appraise the goods and report the various items of information required by section 500, Tariff Act of 1922, to the collector. If the importer's contention has been sustained in the test case, in whole or in part, the collector, if satisfied by this appraisement and by such official information as he may have that the case is similar, wholly or in part, as defined by us in Beaver Products Co. v. United States, 17 C.C.P.A. (Customs) 434, T.D. 43878, to the test case, shall be governed in the liquidation of the entry, wholly or in part, as the case may be, in accordance with the final appraisement in the test case. If he be not satisfied with the appraisement, he may appeal therefrom as provided by section 501 of said Tariff Act of 1922.

"In such appeals two issues may be involved: First, is the case similar to the test case, wholly or in part? If it is, this will conclude the matter, wholly or in part, as the case may be. If it is not, the issue arises, namely, the per se value of the goods, as to such elements of the case as are not so similar. Thus, each party has a right to a full and complete hearing on the matters which are vital to a proper appraisement of the goods and liquidation of the entry. If the cases are wholly dissimilar, the matter will proceed in the usual way.

"Attention is called to the language of this court in United States v. Fuchs & Lang Mfg. Co., supra, as indicating that the collector may exercise a discretion in duress cases as to whether an appraisement may be made or not. While certain expressions in the opinion may be thus construed, our conclusions in the case cited must be read in conjunction with what we have herein said, which indicates the more mature opinion of the court on this question."

We deem it proper to say as a matter of precaution and for the benefit of all who are or may become interested in the question that if the transactions involved here had taken place subsequent to the passage of H.J.Res. 336, supra, on July 12, 1932, the procedure followed, apparently, upon the record before us, would have been the proper procedure and this decision is not to be regarded as a precedent controlling any case arising subsequent to the enactment of that joint resolution.

With respect to the test case, the only question involved before us is whether there is any substantial evidence to support the findings of the appellate division, and upon this we may be quite brief.

The record contains two affidavits, one executed in France by a party by the name of Font, who described himself as general manager of the manufacturing concern by which the perfumeries were exported from France, and the other executed in the United States by a party by the name of Raimon, who stated that he organized the Klytia Corporation (appellee here), and purchased perfumeries for it.

The appellate division weighed the statements made in the affidavits and disagreed with the trial judge as to their evidentiary value. The appeal to us is, of course, from the judgment of the appellate division reversing that of the trial judge, and we must consider it on that basis.

It is not our province in reappraisement proceedings to weigh the evidence when any is found, and we do not feel that we would be justified in holding that the findings of the appellate division with respect to the test case are not supported by some substantial evidence.

For the reasons indicated, the judgment of the United States Customs Court is modified. It is affirmed so far as it applies to reappraisement No. 97410-A, involving entry No. 719177, and reversed so far as it applies to all the other reappraisements, and the cause is remanded with directions that proper steps be taken to the end that the appeals for reappraisements as to those cases be dismissed upon the grounds stated, and for all other action necessary to conform to the views herein expressed.

Modified.

28 C.C.P.A. (Patents)